UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PACIFIC BULK SHIPPING (SINGAPORE) PTE LTD.,

                Plaintiff,

     - against -

PENINSULA ENTERPRISE S.P.A. a/k/a PENINSULA
ENTERPRISE SpA, PENINSULAR ENTERPRISE SPA
or PESPA,

                Defendant.

------------------------------------------------------------------X

ECF CASE



## VERIFIED COMPLAINT

Plaintiff, PACIFIC BULK SHIPPING (SINGAPORE) PTE LTD., (hereafter referred to as "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, PENINSULA ENTERPRISE S.P.A. a/k/a PENINSULA ENTERPRISE SpA, PENINSULAR ENTERPRISE SPA or PESPA ("Defendant"), alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law.

3.     At all material times to this action, Plaintiff was the disponent owner of the motor vessel "XIAMEN SKY" (hereinafter the "Vessel").

4.     Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law.

5.     Pursuant to a charter party dated January 22, 2008 ("Charter Party") Plaintiff chartered the Vessel to Defendant. *See Charter Party annexed hereto as Exhibit "1."*

6.     Disputes then arose between the parties regarding Defendant's failure to pay hire due and owing under the Charter Party.

7.     As a result of Defendant's failure to pay hire in breach of the Charter Party, Plaintiff suffered damages in the approximate amount of $118,023.76, exclusive of interest, arbitration costs and attorneys fees. *See hire statement annexed hereto as Exhibit "2."*

8.     In accordance with the Charter Party, disputes between the parties are to be submitted to arbitration in London with English law to apply.

9.     Despite due demand, Defendant has failed to pay the amounts due and owing to Plaintiff.

10.     Plaintiff will commence arbitration after the commencement of this action and jurisdiction is obtained over Defendant.

11.     This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

12.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

A.     Principal claim –                                     $118,023.76

2

| | | |
|---|---|---|
| B. | Estimated interest on claim -<br>3 years at 7% compounded quarterly: | $27,315.34 |
| C. | Estimated attorneys fees and arbitration costs: | $50,000.00 |
| **Total:** | | **$195,339.10** |

13. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

14. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia,* any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies,

3

tangible or intangible, or any other funds up to the amount of $195,339.10 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.      That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.      That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

F.      That in the alternative, this Court enter Judgment against the Defendant on the claims set forth herein;

G.      That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

H.      That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

4

Dated:        March 18, 2008
              Southport, CT

                         The Plaintiff,
                         PACIFIC BULK SHIPPING (SINGAPORE) PTE LTD.


                         By:

                              Patrick F. Lennon
                              Nancy R. Peterson
                              LENNON, MURPHY & LENNON, LLC
                              420 Lexington Avenue, Suite 300
                              New York, NY 10170
                              (212) 490-6050 - phone
                              (212) 490-6070 -- facsimile
                              pfl@lenmur.com
                              nrp@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )
)　　ss.:　　Town of Southport
County of Fairfield )

1.　My name is Nancy R. Peterson.

2.　I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.　I am a partner in the firm of Lennon, Murphy & Lennon, LLC attorneys for the

Plaintiff.

4.　I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.　The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.　The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.　I am authorized to make this Verification on behalf of the Plaintiff.

Dated:　　March 18, 2008
　　　　　Southport, CT

Nancy R. Peterson

6

EXHIBIT "1"

## Nancy R. Siegel

**From:** ORS-Archer [chartering@orsshipping.com]
**Sent:** Monday, January 21, 2008 6:25 PM
**To:** ORS-Archer; chrtg@pacificbulk.com
**Subject:** Re: RE MV XIAMEN SKY/PEPSA - CLEAN RECAP --- CP DD 22 JAN 2008

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

OCEAN ROBIN SHIPPING LTD

TEL  86-10-84683100(CHANGED)

FAX  86-10-84683200(CHANGED)

EMAIL CHARTERING@ORSBULK.COM

        CHARTERING@ORSSHIPPING.COM

ADD  ROOM 2-515 KUNSHA CENTRE XINYUANLI NO.16

        CHAOYANG DISTRICT, BEIJING(CHANGED)

===========================================


MR.CHANG/ARCHER

PLS FIND BELOW CLEAN RECAP AS PER MUTUAL AGREE:

XIAMEN SKY/Peninsula Enterprise Spa --- CP DD 22 JAN 2008



- MV.XIAMEN SKY

SDBC, HK FLAG, BULT JAN 2005

53,589 DWAT ON 12.49 M SSW  LOA/BM 189.99/32.26M

GRAIN / BALE CAPACITY£°65748 / 63628

GRT/NRT  31,144/18,384

5HO/5HA 4 X 30T

SPEED/CONSUMPTION:

AT SEA : LADEN : ABT 14.00KTS ON ABT 31.5 MT/IFO (380CST)

BALLAST : ABT 14.20KTS ON ABT 31.5 MT/IFO (380CST)£¬UNDER GOOD WEATHER

CONDITIONS  UP TO BF4 AND DSS 3 AND NO NEGATIVE SWELL / NO ADVERSE CURRENT

NDAS BUT VESSEL MAY CONSUME MDO FOR MAIN ENGINE WHEN SAILING IN  SHALLOW,

CONFINED WATERS, MANOEUVERING IN/OUT PORT(S), TRANSITING CANALS.

IN PORT IDLE ABT 2.0 MT MDO/WORKING ABT 4MT MDO
ALL DETAILS ABT

- ACCT Peninsula Enterprise Spa (PESPA)

- DELY DLOSP CORPUS CHRISTI, USG ATDNSHINC

- L/C 1800HRS 23RD - 24OOHRS 31 JAN ( VSL ETA CORPUS CHRISTI 17TH/JAN FOR DISCHARING MINERALS, ETCD 24TH/JAN, AGW WP)

- ONE TCT RIP VIA USG SBSPSA AAAWIWL WITH  GREED DELAYED PETCOKE IN BULK

-DURATION ABT 28 WOG

-REDELIVERY:DLOSP ONE SP SKAW/GIB INCLUDING UK ATDNSHINC

-HIRE: 80,000 USD DAILY

-ILOHC 10000 USD

-V.E.C 1250 USD PMPR

- BUNKER CLS:

  BOD AS ON BOARD ABT 850 MT OF IFO N ABT 45 MT MDO.
  BOR ABT SAME QTY AS BOD.
  BNKR PRICE BEND USD 500 PMT FOR IFO N 830PMT FOR MDO.

- 3.75 PCT ADD COMMISSION + 1.25 PCT ORS + 1.25 PCT ICAPHYDE

--OTHERWISE AS PER OWN PF C/P "MV. XIAMEN SKY / DAEBO SHPG - CP DD 27TH NOV 2006" WITH LOGICAL AMENDMENTS/ALTERATIONS EXCEPT BELOW AMENDMENT :

CL 86 - PETCOKE PROTECTIVE CLAUSE

DELETE PARAGRAPH D; E; F; NOT APPLICABLE IN VIEW OF THE ALREADY AGREED ILOHC

CL 42 STEVEDORE DAMAGE

DELETE FROM "....EXCEPT IN CASE OF HIDDEN DAMAGES" TO THE END OF THE SENENCE

ADD AT THE END OF THE SENTENCE

"BEFORE LOADING AND AFTER DISCHARGING AN INDIPENDENT SURVEYOUR TO INSPECT THE
VESSEL HOLDS FOR DAMAGES. NO RESPONSABILITY WILL BE ACCEPTED FOR HIDDEN DAMAGES
WHICH MIGHT HAVE BEEN ALREADY CAUSED TO THE VESSEL BY PREVIOUS EMPLOYMENTS FOR
THE VERY NATURE OF THEIR BEING HIDDEN".
END

TKS YR SUPPORT SO LONG!

======================

B.RGS / ARCHER
DIR 86-10-84683102
OFF 86-10-84683100
MOB 86-13801012363
MSN ARCHIRWONG@HOTMAIL.COM

3

# TIME CHARTER
NOVEMBER 27, 2006
## TIMECOS
Based on
New York Produce Exchange Form

November 6th, 1913-Amended October 20th, 1921; August 6th, 1931, October 3rd, 1946; June 12th 1981

|  |  |  |
|---|---|---|
| | THIS CHARTER PARTY, made and concluded in ........Beijing...... on | 1 |
| | this ..........27th........... day of ......November 2006................ | 2 |
| Owners | Between ~~...........................................~~, ~~.....................................~~, | 3 |
| | ~~.......................~~, as | 4 |
| | Disponent Owners of | 5 |
| | the good vesse ........HONGKONG.... flag M/V XIAMEN SKY of...53,589 DWT | 5 |
| Description | Bulk Carriers built by (See Clause No. 28) ~~of ................tons gross register, and~~ | 6 |
| Of | ~~.............tons net registered, having engines of .......................~~ | 7 |
| Vessel | ~~horsepower and with hull machinery and equipment in a thoroughly efficient~~ | 8 |
| | ~~state~~ | |
| | ~~and classed 100 A1 Lloyds or equivalent of about .........................~~ | 9 |
| | ~~..................................cubic feet grain capacity excluding~~ | 10 |
| | ~~bleeding wing tanks of ..................................cubic feet grain capacity;~~ | 11 |
| | ~~and .......................cubic feet bale capacity; and................................~~ | 12 |
| | ~~metric tons deadweight capacity (cargo, bunkers, and other weights not~~ | 13 |
| | ~~exceeding.......................................metric tons which allowance includes~~ | 14 |
| | ~~fresh water, stores, lubricating oils and constants) on a salt water draft of~~ | 15 |
| | ~~.............................on summer freeboard, inclusive of permanent~~ | 16 |
| | ~~bunkers, which are of capacity of about.........................................~~ | 17 |
| | ~~metric tons of intermediate fuel oil and.........................................~~ | 18 |
| | ~~metric tons of ordinary marine diesel oil and capable of steaming, fully laden,~~ | 19 |
| | ~~under good weather conditions at a speed of ...............................~~ | 20 |
| | ~~knots on a consumption of .......................~~ | 21 |
| | ~~metric tons of intermediate fuel oi: maximum viscosity............................~~ | 22 |
| | ~~.....................centistokes at 50ºC, and............................~~ | 23 |
| | ~~metric tons of ordinary marine diesel oil, ............................~~ | 24 |
| | ~~...........................~~ | 25 |
| Charterers | and  DAEBO SHIPPING CO., LTD. as Charterers of the City of Seoul, South | 26 |
| | Korea | |
| | ........................................... | 27 |
| Duration | The Owners agree to let and the Charterers agree to hire the vessel | 28 |
| | from the time of delivery for a period of ............................................... | 29 |
| | ~~.............~~ period time charter via safe anchorage(s), | 30 |
| | safe berth(s), safe port(s), always afloat always accessible, always | |
| | within Institute Warranty Limits, worldwide trading, (about means 15 | |
| | days      more      or      less      in      Charterer's | 31 |
| | option....................................................................... | 32 |
| | ....................................................... | |
| | ...................................................... within below mentioned | 33 |
| | | 34 |
| | trading limits. | |
| Sublet | Charterers shall have liberty to sublet the vessel for all or any part of the time | 35 |
| | covered by this Charter, but Charterers shall remain responsible for the | 36 |
| | fulfillment | 37 |
| | of this Charter. | |
| Delivery | Vessel shall be placed at the disposal of the Charterers on dropping last outward | 38 |
| | sea pilot one safe port world wide at any time day or night Sundays and | 39 |
| | Holidays included | |
| | ............................................................................ | 40 |
| | ....................................................... | 41 |
| | ~~in such dock or at such berth or place (where she may safely lie, always afloat, at~~ | 42 |
| | ~~all time of tide, except as otherwise provided in Clause 6) as the Charterers may~~ | 43 |
| | ~~direct.~~ Vessel on her delivery shall be ready to receive any permissible cargo with | 44 |
| | thoroughly clean, dry holds and tight, staunch, strong and in every way fitted for | 45 |
| | any permitted cargo service, having water ballast and with sufficient power to | 46 |
| | operate all cargo-handling gear simultaneously (and with full complement of | 47 |

com-

**Cargo** petent officer and crew for a vessel of her tonnage and design), to be employed 48
in carrying lawful merchandise excluding livestock, acids and other dangerous 49
and

**Exclusions** injurious cargoes, mahogany logs, asphalt and soft pitch in bulk. 50
**Also See Clause No. 86.** 51
52

**Trading** The Vessel shall be employed in such lawful trades between safe ports, berths, 53
anchorages and

**Limits** places **Also See Clause No. 98** as the Charterers or their agents shall direct on 54
the following conditions:
Charterers, giving ample notice to Owners, have the liberty 55
of trading outside Institute Warranty Limits but shall reimburse Owners for 56
any additional insurance premiums actually paid by them as per Clause No. 33. 57

**Owners** 1. The Owners shall provide and pay for the insurance of the vessel and for 58
**to** all provisions, cabin, deck, engine-room and other necessary stores, including 59
**Provide** lubricating oils and boiler water; shall pay for wages, consular shipping 60
and discharging fees of the crew and charges for port services pertaining to the 61
crew including garbage removal and ship's guard/gangway watchmen will be 62
provided by members of the crew, if for cargo, then to be for Charterers'
account, if for vessel to be for Owners' account unless port regulation provided
otherwise in which case Charterers are to arrange and pay for same; shall
maintain vessel's class and
keep her in a thoroughly efficient and well maintained state in hull, holds, 63
machinery and equipment for and during the service. 64
65
66
67

**Charterers** 2. The Charterers, while the vessel is on-hire, shall provide and pay for all the 68
**to** fuel except as otherwise agreed, port charges, pilotages, towages, 69
**Provide** agencies (except those levied for Owners business), commissions, consular 70
charges (except those pertaining to individual crew members or flag of the 71
vessel),
and all other usual expenses except those stated in Clause No. 1, but when the 72
vessel puts into, or remains in a port for causes for which vessel is responsible, 73
then all such charges incurred in consequence shall be paid by the Owners. Fu- 74
Migations ordered because of illness of the crew shall be for Owners account. 75
Fumigations ordered because of cargoes carried or ports visited while vessel is 76
employed under this Charter shall be for Charterers account. 77
Charterers shall provide necessary dunnage and shifting boards, also any 78
extra fittings or temporary modifications requisite for a special trade or unusual 79
cargo, but Owners shall allow them the use of any dunnage and shifting boards 80
or any such other equipment as may be already aboard vessel. On delivery, any 81
fittings, shifting boards, and dunnage not required by Charterers to be stored by 82
Owners at their expense. 83

**Bunker** 3. The Charterers on delivery, and the Owners on redelivery, shall take 84
**on** over and pay for all fuel and diesel oil remaining on board the vessel as here- 85
**Delivery** under. **'Bunkers on delivery as onboard about ▇▇▇ metric ton IFO and** 86
**about ▇▇ metric ton MDO, bunkers on redelivery to be about same**
**quantities as actually onboard on delivery. Bunker prices at both ends**
**USD▇▇ per metric ton for IFO and USD▇▇ per metric ton for MDO.**
**Charterers have the option to bunker vessel for their own account in**
**their time/risk/expense prior to delivery provided the bunkering**
**operation does not interfere with vessel's operation. Owners to have the**
**same option prior to redelivery.**

**and** ~~metric tons of fuel oil at the price of ......,...............per metric ton;~~ 87
**Redelivery** ~~.........................................metric tons of diesel oil at the price of~~ 88
~~...............................per metric ton. The vessel shall be redelivered with:~~ 89
~~...............................metric tons of fuel oil at the price of~~ 90
~~..............................per metric ton;....................................~~ 91
~~metric tons of diesel oil at the price of .................................per metric ton.~~ 92
It is understood vessel is free from United States Bunkering Restrictions. 93
Charterers
have the option of bunkering the vessel prior to delivery provided same does 94
not interfere with Owners operations. 95
(See Clause No. 92.) 96

**Rate of**
**Hire**
4. The Charterers shall pay for the use and hire of said vessel at the rate 97
of USD ~~██████~~ per day including overtime in United States Dollars, 98
**payable every 15 days in advance,** 99
~~per long ton inclusive of overtime, on vessel's total deadweight carrying capacity,~~ 100
~~including bunkers and stores, on...... ........summer freeboard, per calendar~~ 101
~~month,~~ commencing on and from the time of her delivery, as afore- 102
said and at and after the same rate for any part of a day ~~month,~~ hire shall 103

**Redelivery**
**Areas and**
**Notices**
continue until the time of the day of her redelivery in like good order 104
and condition, (See Clause No. 61) ordinary wear and tear expected, to the 105
Owners (unless vessel lost) at on dropping last outward sea pilot 106
one safe port, in following ranges **(See Clause 112)** in Charterers' option at any 107
time day or night,
Sunday and holiday included ........ ................................................................... 108
................................................................................................................ 109
.................................................................... unless otherwise mutually agreed. 110
Charterers shall give Owners not less than 30/20/15 days approximate notice 111
of vessel's expected date of redelivery and probable port and 10/7/5/3/2/1 days 112
definite notice of expected port and date of redelivery.

**Hire**
5. Payment of hire shall be made so as to be received by Owners nominated 113
bank or their

**Payment**
**and**
**Commencement**
designated payee ~~in New York~~ to be nominated by Owners, .......................... 114
....................................................................................................................... 115
....................................................................................................................... 116
In United States Currency, in funds available to the Owners on the 117
due date, **15 days** in advance, and for the last half month or part of same 118
the approximate amount of hire, and should same not cover the actual time, 119
hire shall be paid for the balance day by day as it becomes due, if so required by 120
Owners. Charterers have the right to withhold from last sufficient hire; a) Any 121
amounts which both Charterers and Owners reasonably estimate to relate to off- 122
hire periods, and b) Any amounts disbursed on Owners behalf, any advances and 123
commission thereon, and any charges which are for Owners account pursuant to 124
any provision hereof, all of which to be supported by vouchers or other 125
supporting evidence, and and any amounts due to Charterers hereunder, 126
**Owners to pay Charterers Owners disbursement against supporting**
**vouchers time to time, however, as Owners will appoint protective**
**agents to handle Owners'/Master's affairs in most ports of call,**
**Charterers are not allowed to deduct estimated Owners expenses unless**
**supporting documents received fm Charterers.** and c)
from the last hire payment, any amounts for reasonably estimated Owners 127
disbursements but maximum USD ~~█████~~ total and reasonably estimated amount 128
of re-delivery bunkers. Failing the punctual and regular payment of the hire, or 129
on any breach of this Charter, the Owners shall be at liberty to withdraw the 130
vessel from the service of Charterers without prejudice to any claims they (the 131
Owners) may otherwise have on the Charterers. (See Clause No. 78.) 132
The vessel will be on-hire as per lines 38,39,40&41. 133

**Cash**
**Advances**
Cash for vessel's ordinary disbursements at any port ~~may~~ shall be advanced, 134
as requested by the Master and approved by Owners, by the Charterers or their 135
agents, subject to 2.5 percent commission and such advances shall be deducted 136
from the hire. ~~The Charterers, however, shall in no way be responsible for the~~ 137
~~application of such advances.~~ 138

**Berth**
6. Vessel shall be loaded and discharged in any dock or at any berth or 139
anchorage, or place that Charterers or their agents may direct, provided the 140
vessel
can safely lie always afloat at any time of tide, ~~except at such places where it is~~ 141
~~customary for similar size vessels to safely lie aground.~~ 142

**Spaces**
**Available**
7. The whole reach of the vessel's holds, decks, and usual places of 143
loading (not more than she can reasonably and safely stow and carry), also 144
accommodations for supercargo, if carried, shall be at the Charterers disposal, 145
reserving only proper and sufficient space for ship's officers, crew, tackle, 146
apparel, furniture, provisions, stores and fuel. **No passenger allowed.** 147

**Prosecution**
**of**
**Voyage**
8. The Captain shall prosecute his voyages with due despatch, and shall 148
render all customary assistance with ship's crew, equipment and boats including 149
sweeping and/or cleaning holds. The captain, although appointed by the Owners, 150
shall be under the orders and directions of the Charterers as regards employment 151
and agency; and Charterers are to perform all cargo handling at their expense 152
under the supervision of the Captain; who is to sign the bills of 153

| | | |
|---|---|---|
| **Bills**<br>**of**<br>**Lading** | lading for cargo as presented in conformity with mate's ~~or tally clerk's~~ receipts.<br>However, at Charterers option, the Charterers or their agents may sign bills of<br>lading on behalf of the Captain always in conformity with mate's ~~or tally clerk's~~<br>receipt without prejudice to this Charter Party. | 154<br>155<br>156<br>157 |

**Conduct of**    9. If the Charterers shall have reason to be dissatisfied with the conduct of the   158
**Captain**    Captain or officers, the Owners shall, on receiving particulars of the complaint,   159
investigate the same, and, if necessary, make a change in the appointment. But   160
this provision shall be without prejudice to any other rights which the Charterers   161
may have under this Clause. Captain and officers shall be fluent in English.   162

**Supercargo**    10. The Charterers are entitled to appoint a supercargo, who shall accompany   163
**and**    the vessel and see that voyages are prosecuted with due despatch. He is to   164
**Meals**    be furnished with free accommodation and same fare as provided for Captain's   165
table, Charterers paying at the rate of USD10.00 per day. **Supercargo and**   166
**Charterers to sign Owners' Letter of Indemnity prior to supercargo**   167
**boarding vessel.** Owners shall victual pilots and customs officers, and also,   168
when authorized by Charterers or their agents in writing, shall victual tally   169
clerks, stevedores' foreman, etc., Charterers paying at the rate of USD   170
5.00 per meal for all such victualling.   171

**Sailing**    11. The Charterers shall furnish the Captain from time to time with all   172
**Orders**    requisite instructions and sailing directions, in writing, and the Captain shall keep   173
**and Logs**    full and correct deck and engine logs, and such other documents as the   174
Charterers may reasonably request, of the voyage or voyages, which are to be   175
patent to the Charterers or their agents, and furnish the Charterers, their agents   176
or supercargo, when required, with a true copy of such deck and engine   177
logs in the English, showing the course of vessel, distance run and the   178
consumption of fuel and diesel oil.   179
.................................................................................................................   180

**Ventilation**    12. The Captain shall use diligence in the caring for and, if required, the   181
ventilation of the cargo.   182

**Continuation**    ~~13. The Charterers shall have the option of continuing this Charter for a~~   183
~~further period of......................................................~~   184
.................................................................................................................   185
.................................................................................................................   186
.................................................................................................................   187

**Laydays/**    14. If required by Charterers, time shall not commence before 0001 hours   188
**Canceling**    ...............**1ST...January, 2007**...................... and should vessel not have   189
**been delivered** given written notice of readiness on or before   190
......**28TH...February, 2007**...................... but not later than 24:00 hours. **to**   191
**be narrowed to 15 days spread, 25 days prior to 1st layday to be**
**narrowed to 7 days spread, 20 days prior to 1st layday, thereafter**
**owners to give 15,10,7,3,2,1 days notice.**
Charterers or their agents shall have the option of canceling this Charter at any   192
time not later than the day of vessel's readiness.   193
See Clause 29.   194
.................................................................................................................   195

**Off**    15. In the event of the loss of time from strikes, breach of orders   196
**Hire**    on the part of Master, officers or crew or from deficiency and/or default of   197

Masters, officers or crew or deficiency of stores, fire, breakdown of, or damages   198
(whether partial or otherwise) to hull, machinery or equipment, grounding,   199
detention or delay by average accidents to ship or cargo unless resulting from   200
inherent vice, quality or defect of the cargo, drydocking for the purpose of
examination or painting bottom, or by any other similar cause preventing the   201
full working of the vessel, the payment of hire, if any, shall cease for the time   202
thereby lost and until the vessel is again in an efficient state. Should the vessel   203
deviate or put back during a voyage, contrary to the orders or directions of the   204
Charterers, for any reason other

than accident to the cargo, the hire is to be suspended from the time of her   205
deviating or putting back until she is again in the same or equidistant position   206
from the destination and the voyage resumed therefrom. All fuel used by the   207
vessel while off-hire shall be for Owners account. In the event of the vessel being   208
driven into port or to anchorage through stress of weather, trading to shallow
harbors or to rivers or ports with bars, any detention of the vessel, and/or
expenses resulting form such detention shall be for the Charterers' account. If
upon the voyage the speed

be reduced by defect in, or breakdown of, any part of her hull, machinery    209
or equipment, the time so lost, and the cost of any extra fuel consumed    210
in consequence thereof, and all extra expenses shall be deducted from the hire.    211
........................................................................................................................................    212

**Total**    16. Should the vessel be lost, money paid in advance and not earned (reck-    213
**Loss**    oning from the date of loss or being last heard of) shall be returned to the    214
Charterers at once.    215

**Exceptions**    The act of god, enemies, fire, restraint of princes, rulers and people, and all    216
dangers and accidents of the seas; rivers, machinery, boilers and steam    217
navigation, and errors of navigation throughout this Charter, always mutually    218
excepted.    219

**Liberties**    The vessel shall have the liberty to sail with or without pilots, to tow and to be    220
towed, to assist vessels in distress, and to deviate for the purpose of saving life    221
and property.    222
........................................................................................................................................    223
........................................................................................................................................    224

**Disputes**    17. Should any dispute arise between Owners and the Charterers, the matter    225
in dispute shall be dealt with in the manner prescribed by Clause No. 80    226

**Lien**    18. The Owners shall have a lien upon all cargoes and all sub-freights, sub-    227
hires, for any amounts due under this Charter, including general average contri-    228
butions, and the Charterers shall have a lien on the ship for all monies paid in    229
advance and not earned, and any other amounts due under this Charter.    230
Charterers
will not suffer, nor permit to be continued, any lien or encumbrance incurred by    231
them or their agents, which might have priority over the title and interest of the    232
Owners in the vessel. **Charterers undertake that during the currency of**    233
**this Charter, they will not procure any supplies or necessaries or**
**services, including any port expenses and bunkers, on the credit of the**
**Owners or in the Owners' time.**

**Salvage**    19. All derelicts and salvage shall be for Owners and Charterers equal benefit    234
after deducting Owners and Charterers expenses and crew's proportion **provided**    235
**the vessel is fully on hire for the corresponding period.**

General average shall be adjusted, according to the York-Antwerp Rules of    236
**General**    1994, and any amendments thereto, in London or New York in Charterers option,    237
**Average**    and as to matters not provided for by those rules, according to the laws and    238
**York-**    usages in either London or New York in Charterers option. Hire not to contribute    239
**Antwerp**    to general average.    240
**Rules**    Charterers shall produce that all bills of lading issued during the currency of    241
the Charter will contain a provision to the effect that general average shall be    242
adjusted according to York-Antwerp Rules 1994 and subsequent amendments    243
and will include the "New Jason
Clause" as per Clause No. 22.    244

**Drydocking**    20. The vessel was last drydocked in................................................................    245
at ...................................................The Owners shall be required at their    246
expense to place the vessel in drydock at interval of about 24/30...................    247
months during the currency of this Charter at a convenient time and place so    248
as not to adversely affect Charterers schedule or employment of the vessel, for    249
bottom cleaning and painting and/or repair as required by Class, wear and tear    250
or dictated by circumstances. Owners to give Charterers 3 months approximate    251
notice
of intention to drydock, 30days rough intention of drydock location and 15 days    252
definite notice of drydock location.
Payment of hire shall be suspended upon deviation from Charterers service until    253
vessel is again placed at Charterers disposal at a point not less favorable to    254
Charterers than when the hire was suspended and all fuel and any other ex-    255
penses incurred proceeding to or from drydocking shall be for Owners account.    256

**Cargo**    21. Owners shall maintain the cargo handling gear of the ship which is as    257
**Gear**    fellows: (See Clause No. 28 and No. 50) ...........................................................    258
........................................................................................................................................    259
........................................................................................................................................    260
Owners shall also provide on the vessel for night work lights sufficient to    261
effectively
work all hatches simultaneously. The Charterers shall have the use of any gear    262
and equipment on board the vessel. Vessel shall work night and day including    263
weekends/holidays, during loading and discharging, if required by Charterers;    264
and

~~all gear to be at Charterers disposal during loading and discharging; vessel to~~ 265
~~provide craneman and/or crew to work day and night, to open and close hatches,~~ 266
~~to connect hoses, to remove and replace beams and hatchboards or pontoons,~~ 267
~~where so fitted, and to perform any other usual tasks as required by Charterers.~~ 268
~~-- If the rules of port, or labour unions, prevent the crew from working gear~~ 269
~~or opening or closing hatches, removing and replacing beams and hatchboards or~~ 270
~~pontoons, where so fitted, shore labour to be paid by Charterers. In the event of~~ 271
~~disable gear or insufficient power to operate gear, Owners to pay for suitable~~ 272
~~substitute shore engine(s) or crane(s), and also for any longshoremen and/or~~ 273
~~stevedore standby time occasioned thereby. Hire to be reduced proportionately~~ 274
~~to~~
~~the total number of working hatches, for all time gear is unavailable due to~~ 275
~~disability~~
~~or loss of power. If the vessel is detained as a result of disabled gear, and such~~ 276
~~detention or loss of time would not have occurred had the gear been available at~~ 277
~~all times, then payment of hire to be adjusted accordingly as per Clause No. 15.~~ 278
See Clause NO. 87.

22. This Charter is subject to the following clauses or ones having similar 279
effect all of which are to be included in all bills of lading issued hereunder: 280

**Clauses**
**Paramount**
"This bill of lading shall have effect subject to the provisions of the Carriage 281
of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby 282
Rules, as applicable, or such other similar national legislation as may mandatorily 283
apply by virtue of origin or destination of the bills of lading, which shall be 284
deemed to be incorporated herein and nothing herein contained shall be deemed 285
a surrender by the carrier of any of its rights or immunities or an increase of any 286
of its responsibilities or liabilities under said applicable Act. If any term of this bill 287
of lading is repugnant to said applicable Act to any extent, such term shall be 288
void to that extent, but no further." 289

**New**
**Both-**
**To-**
**Blame**
**Collision**
**Clause**
"If the ship comes into collision with another ship as a result of the negligence 290
of the other ship and any act, neglect or default of the master, mariner, pilot or 291
the servants of the carrier in the navigation or in the management of the ship, 292
the Owners of the goods carried hereunder will indemnify the carrier against all 293
loss or liability to the other or non-carrying ship or her owners insofar as such 294
loss or liability represents loss of, or damage to, or any claim whatsoever of the 295
owners
of said goods, paid or payable by the other or non-carrying ship or her owners to 296
the owners of said goods and set off, recouped or recovered by the other or non- 297
carrying ship or her owners as part of their claim against the carrying ship or 298
carrier.
The foregoing provisions shall also apply where the owners, operators or those 299
in charge of any ships or objects other than, or in addition to, the colliding ships 300
or
objects are at fault in respect to a collision or contact." 301

**New**
**Jason**
**Clause**
"In the event of accident, danger, damage or disaster before or after com- 302
mencement of the voyage resulting from any cause whatsoever, whether due to 303
negligence or not, for which, or for the consequences of which, the carrier is not 304
responsible, by statute, contract, or otherwise, the goods, shippers, consignees, 305
or owners of the goods shall contribute with the carrier in general average to the 306
payment of any sacrifices, losses, or expenses of a general average nature that 307
may be made or incurred, and shall pay salvage and special charges incurred in 308
respect of the goods. 309
If a salving ship is owned or operated by the carrier, salvage shall be paid for 310
as fully as if salving ship or ships belonged to strangers. Such deposit as the 311
carrier
or his agents may deem sufficient to cover the estimated contribution of the 312
goods
and any salvage and special charges thereon shall, if required, be made by the 313
goods, shippers, consignees or owners of the goods to the carrier before 314
delivery."

**War**
**Clauses**
~~"No contraband of war shall be shipped. Vessel shall not be required, without~~ 315
~~the consent of Owners, which shall not be unreasonably withheld, to enter any~~ 316
~~port~~
~~or zone which is involved in a state of war, warlike operations, or hostilities, civil~~ 317
~~strife, insurrection or piracy whether there be a declaration of war or not, where~~ 318
~~vessel, cargo or crew might reasonably be expected to be subject to capture,~~ 319
~~seizure or arrest, or to a hostile act by a belligerent power (the term "power"~~ 320

~~meaning any de jure or de facto authority or any purported governmental organi-~~ 321
~~zation maintaining naval, military or air forces)."~~ 322

Basic War Risk and Crew Bonus for worldwide trading to be for Owners 323
account. In the event Charterers employ the vessel in a trade for which there is 324
additional War Risk Insurance Premium, Charterers shall reimburse Owners for 325
additional premium actually paid by them less usual rebate based on the present 326
total H&M value of the ship, but not to exceed the scale from time to 327
time published by the Institute of London Underwriter. Any increase in Crew War 328
Bonus after delivery caused by the trade in which vessel is engaged to be for 329
Charterers account but not exceeding that which is customary for the trade. 330

**Ice**     23. The vessel shall not be required to enter or remain in any icebound port 331
or area, nor any port or area where lights or lightships have been or are about to 332
be withdrawn by reason of ice, nor where there is risk that in the ordinary course 333
of things the vessel will not be able on account of ice to safely enter and remain 334
in the port or area or to get out after having completed loading or discharging. 335
**Vessel never to force ice nor push ice nor to follow ice breaker.**

**Navigation**     24. Nothing herein stated is to be constructed as a demise of the vessel to the 336
Time Charterers. The Owners shall remain responsible for the navigation of the 337
vessel, acts of pilots and tug boats, insurance, crew, and all other similar 338
matters, same as when trading for their own account. 339

**Commissions**     25. A commission of ............████.................... percent is payable by 340
the vessel and the Owners to........████████████████████ 341

...................................................... 342
on hire earned and paid under this Charter, and also upon any extension of this 343
Charter. 344

**Address**     26. An address commission of...████..percent is payable to **Charterers**........... 345

on hire earned and paid under this Charter and also upon any extension 346
of this Charter. Such commission shall be deducted from the hire payments. 347

**Rider**     27. Rider Clause No. 28 through to and including No. **115** as attached hereto 348
are incorporated in this Charter. 349

          Owners                                    Charterers


          _____                    _____


          Printed Name:                        Printed Name:
          Title:                               Title:

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Cl.28 Vessel Description

MV XIAMEN SKY
SDBC, HK FLAG, BUILT JAN 2005
53,589 DWAT ON 12.49 M SSW  LOA/BM 189.99/32.26M
GRAIN / BALE CAPACITY:   65748 / 63628
GRT/NRT  31,144/18,384
5HO/5HA 4 X 30T
SPEED/CONSUMPTION:
AT SEA : LADEN:  ABT 14.00KTS ON ABT 31.5 MT/IFO (380CST) /  BALLAST: ABT
14.20KTS ON ABT 31.5 MT/IFO (380CST)   ,  UNDER GOOD WEATHER
CONDITIONS  UP TO BF4 AND DSS 3 AND NO NEGATIVE SWELL / NO ADVERSE
CURRENT
NDAS BUT VESSEL MAY CONSUME MDO FOR MAIN ENGINE WHEN SAILING
IN SHALLOW, CONFINED WATERS, MANOEUVERING IN/OUT PORT(S),
TRANSITING CANALS.
IN PORT  IDLE ABT 2.0 MT MDO/WORKING ABT 4MT MDO
ALL DETAILS ABT

BUNKER GRADES:
FUEL OIL  - 380CST WITHIN ISO 8217:  2005 (E) GRADE RMG 35
DIESEL OIL - MDO  WITHIN ISO 8217:  2005 (E) ISO-F-DMB

Cl.29 Interpellation
Should the Owners anticipate that, despite the exercise of due diligence, the vessel will not be
ready to deliver by the canceling date, they shall notify the Charterers thereof without delay
stating the expected date of the vessel's readiness to deliver and asking whether the Charterers
will exercise their option of canceling the charter party, or agree to a new canceling date.

Such option must be declared by the Charterers within 24 running hours after the receipt of the
Owners' notice. If the Charterers do not exercise their option of canceling, then this Charter
Party shall be deemed to be amended such that the seventh day after the new readiness date
stated in the Owners' notification to the Charterers shall be the new canceling date.

Cl.30 Speed Consumption

The words, "good weather condition" in this charter shall mean any weather conditions in which
the wind does not exceed force 4 at Beaufort Scale. Weather reports to be taken from vessel's
deck log and from Oceanroutes, if so elected by Charterers. In the event of consistent
discrepancies between the two (2) sources, Oceanroutes reports to be taken as final.

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Port consumption – See Clause No.28

Charterers shall be entitled to instruct the vessel to steam at reduced or increased speed for commercial or operational reasons subject to constraints imposed by the physical characteristics of the vessel's machinery.

(See also Clauses Nos. 28 and 88)

### Cl.31 Delivery Notices

Permissible delays as defined in the NB contracts are allowed in which case cancelling dates are to be extended accordingly.

Owners to give Charterers 5/3/2/1 days notices of delivery.

### Cl.32 On-Hire/Off-Hire Surveys

At port of delivery in Owners' time, and at last discharge port prior to redelivery, in Charterers' time, a joint on-off hire survey to be held by a single independent surveyor jointly appointed for the purpose of ascertaining the vessel' condition and quantities of bunkers remaining onboard. Cost of same to be equally shared between Owners and Charterers. Any off-hire for actual working time lost due to surveys to be split 50/50 between Owners and Charterers.

### Cl.33 Additional Insurance Premiums

Charterers have option to break IWL subject to Owners' and their underwriters' prior consent which is not to be unreasonable withheld against Charterers paying Owners additional premium on hull and machinery as per vouchers from vessel's underwriters.

### Cl.34 Return Insurance

Charterers shall have the benefit of any return insurance premium receivable by Owners from their underwriters as and when received from the underwriters by reason of the vessel being in port for a minimum period of 30 days provided that the vessel is fully on hire for the corresponding period.

### Cl.35 Extra Insurance

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Any additional insurance levied on vessel and/or cargo by reason of the vessel's age, flag, ownership, class or condition to be borne by Owners.

Any additional insurance premium levied on cargo by Charterers or their customers to be borne by Charterers.

### Cl.36 Houseflag/Markings/Funnel

N/A

### Cl.37 U.S. Security Clause for Time Chartering

If the Vessel calls in the United States, including any U.S. territory, the following provisions shall apply with respect to any applicable security regulations or measures:

Notwithstanding anything else contained in this Charter Party all costs or expenses arising out of or related to security regulations or measures required by any U.S. authority including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence.

### Cl.38 Off-Hire Periods

Charterers to have the option of adding any or all time the vessel is "off-hire" to the maximum charter period, such declaration to be made latest by 3 months prior to redelivery.

### Cl.39 Cancellation Due to Extended Off-Hire

If the vessel is off-hire consecutively for one hundred and twenty (120) days or more due to any cause(s) other than Charterers' responsibility, the Charterers shall have the option to cancel this Charter Party, without prejudice to any other rights, remedies or claims which the Charterers may have. Such option shall be exercised by the Charterers by giving written notice of cancellation to the Owners and the vessel shall be redelivered as soon as practicable thereafter once free of cargo properly and duly discharged under any applicable contract of carriage. There will be no responsibility whatsoever on the part of the Owners should this Charter Party be cancelled arising from offhire as a result of repairs due to the perils of the sea.

MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

## Cl.40 BIMCO ISPS Clause for Time Charter Parties

BIMCO ISPS / MTSA Clause for time Charter Parties 2005 to be applied.

## Cl.41 Deviation

If during the currency to this charter there is any deviation during the course of a voyage or any loss of time, caused by sickness of the Master, or any member of the crew, vessel to be considered as off-hire and hire shall not be paid for the time lost, and the cost of extra fuel consumed shall be for Owners' account.

## Cl.42 Stevedore Damage

Charterers are not responsible for stevedore or other damage to the vessel unless the Charterers or their Agents are notified in writing by the Captain or Owners' Agents within 48 hours of occurrence of damage, except in case of hidden damage which to be notified as soon as practicable after discovered prior to redelivery. Should a stevedore damage is caused, Captain to try to let stevedore repair the damage and to try to settle the matter directly with them in the first stage. Failing this, Captain will endeavor to obtain signed acknowledgement of the damage and liability for the same of the Stevedore. Any stevedore damage affecting seaworthiness to be repaired at the Charterers' expense and time. The Owners to have the option to accept redelivery without Charterers repairing any minor stevedore damage, and in such case the Charterers to pay for cost and time, estimated by joint off-hire surveyor, of repairing such stevedore damages unless repairs are effected simultaneously with dry docking or other repairs for the Owners' account, and no loss of time incurred.

## Cl.43 Hold Ladders

Vessel's accommodation and pilot ladders as well as hold ladders and accesses thereto are to be kept in good repair so as to comply with the safety requirements at all ports of call. Any delays to vessel and/or her operations as a result of non-compliance with this clause to be considered as off-hire and extra expenses incurred to be for Owners' account.

## Cl.44 Quarantine

Owners shall be liable for any delay in quarantine arising from the Master, Officers or crew having communication with the shore at any infected area without the written consent of Charterers or their agents, also for any loss of time through detention by customs or other authorities caused by smuggling or other infractions of local law on the part of the Master, Officers or crew. Any time lost by such causes may be deducted as off-hire.

### Cl.45 Fumigation

Vessel to be in possession of a valid deratization or exemption certificate throughout the duration of the Charter Party.

### Cl.46 Safety and Health Regulation

Owners warrant that the vessel shall be in possession of the necessary certificates to comply with all safety and health regulations at all ports of call during the currency of this charter, without hindrance or delay.

### Cl.47 Australian Regulations

Vessel will comply with and be maintained in accordance with the requirements of the Commonwealth of Australia loading and unloading safety measure regulations. Owners confirm that the vessel is fitted, and will be fitted throughout the duration of this charter, with hold ladders that conform to the Regulations of the Waterside Workers Federation of Australia.

### Cl.48 Tonnage Certificates

Deleted.

### Cl.49 Cargo and Equipment

Owners guarantee that throughout this charter, vessel's equipment shall comply with healthy and safety regulations at all ports of call, canals and countries in which vessel will be employed. Owners also guarantee that vessel shall be at all times in possession of a valid and up-to-date certificate on board to comply with such regulations and/or requirements. If stevedores, longshoremen or other laborers are not permitted to work by reason of any failure of the Captain,

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Owners and/or their Agents to comply with such regulations or by reason that vessel is not in possession of such valid and up-to-date certificate(s), then Owners shall take immediately corrective measures.

Charterers may suspend hire for time lost thereby and any extra expenses including stevedores' stand-by time but maximum one shift shall be for Owners' account.

### Cl.50 Canal Transit

During the full currency of this Charter Party, Owners shall keep the vessel fully capable and equipped to transit the Suez Canal and Panama Canal without delay in accordance with the rules and regulations governing navigation of the canals mentioned above and promulgated from time to time by the local authorities.

### Cl.51 Flag Restrictions

Owners shall be responsible in the event of loss time, delay and/or impossibility of or restrictions on the full working of the ship, including but not limited to any action taken by third parties, as a result of or in connection with registration of the ship; her flag; and/or the terms and conditions upon which the crew of the ship are employed by Owners. The ship shall be off-hire for any time lost and extra expenses resulting directly to Charterers by reason of or in connection with these causes may be deducted from hire.

### Cl.52 Third Party Suits

Should the vessel be delayed, detained or arrested during the currency of this Charter Party at the suit of any party having or purporting to have a claim against or any interest in the vessel, Master, her crew or Owners except any claim relating to the cargoes carried during the currency of this Charter or any claim deriving from Charterers' or Sub-Charterers' business or as a result of any act/neglect/default of the Charterers and/or Sub-Charterers, their agents or servants, hire under this Charter Party shall not be payable in respect of any period during which the vessel is not fully at Charterers' disposal and extra expenses resulting from same which the Charterers may incur, are to be for Owners' account.

### Cl.53 Inter-Club Agreement

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Cargo claims between the Owners and the Charterers shall be settled in accordance with the INTER-CLUB NEW YORK PRODUCE EXCHANGE AGREEMENT in September 1996 and any amendment thereto.

### Cl.54 P. and I. Cover

Vessel shall be entered and will remain entered during the full currency of this Charter with a recognized first class P. and I. Club and shall carry full P. and I. Cover, including cargo and pollution cover. Such cover shall always be at the sole expenses of the Owners. If the Owners fail to maintain P. and I. Cover as provided for in this Clause, in the manner described, Charterers may place equivalent insurance at Owners' expenses and deduct the cost of such insurance from the vessel's hire.

Owners have vessel covered with (to be advised later). Charterers have their Time-Charterers' Liability insurance covered with (to be advised later).

### Cl.55 Financial Responsibility in Respect of Pollution

BIMCO OIL POLLUTION CHARTER PARTY CLAUSE (NON TANKERS) to be applied.

### Cl.56 Pollution

Owners warrant that the vessel is entered with the protection and indemnity insurer listed in Clause No.54 for the full coverage available for marine pollution risks.

When an escape or discharge of oil or hazardous substances occurs from the vessel and causes or threatens to cause pollution damage, or when there is the threat of an escape or discharge of oil or other hazardous substances (i.e. a grave and imminent danger of the escape or discharge which, if it occurred, would create a serious danger of pollution damage), then Owners shall immediately undertake such measures as are reasonably necessary to prevent or minimize such damage or to remove the threat. Owners shall keep Charterers advised of the nature and result of any measures taken by them, and, if time permits, the nature of the measures intended to be taken by them.

In the event Owners fail to undertake such measures, Charterers may, at their option, upon notice to Owners or the Master, do so themselves and any measures taken by Charterers shall be deemed taken on Owners' authority and as Owners' Agent and shall be at Owners' expense

## MV. XIAMEN SKY/DAEBO SHIPPING -- RIDER CLAUSES CP DD 27TH NOV.,2006

except to the extent that any such pollution damage or threat was caused or contributed to by Charterers.

### Cl.57 Bunkering Privileges

Owners certify that the vessel is and will remain so throughout the duration of this charter, eligible for full bunkering privileges in the United States of America and its territories and possessions, under all present and future United States laws and/or regulations and is not, nor will be restricted, as to bunkering at any other countries or ports of call during this charter.

### Cl.58 BIMCO Fuel Sulphur Content Clause

BIMCO BUNKER FUEL SULPHUR CONTENT CLAUSE FOR TIME CHARTER PARTIES 2005 to be applied.

### Cl.59 Ice Clause

Vessel never to proceed to ice area nor to force nor push ice nor to follow ice breaker.

### Cl.60 Hold Cleaning

All holds on arrival at Charterers' first loading port to be clean swept and dried up in every respects to load Chaterers' intended cargo and to pass relevant surveyors/authorities inspection. If fails to pass such inspection vessel to be put off hire until reinspection passed and all substantiated expenses arising therefrom to be for Owners' account. It is however understood and agreed that should holds partially failed such inspection and loading operations take place in those holds passed then the vessel will be placed off-hire pro-rata to the number of holds rejected only.

### INTERMEDIATE HOLD CLEANING

CLEANING OF HOLDS IN BETWEEN CARGOES, IF REQUIRED CHARTERERS AND PROVIDED LOCAL REGULATIONS /WEATHER /SAFETY / TIME PERMIT, TO BE DONE BY THE VESSEL'S CREW UPTO INTENDED CARGO FITNESS IN CHARTERERS' TIME AND WITHOUT ANY RESPONSIBILITY TO OWNERS BUT OWNERS/CREW TO PROVIDE FULL COOPERATION AND USE BEST EFFORTS. CHARTERERS TO PAY USD 700 PER HOLD EXCL REMOVAL/DISPOSAL OF DUNNAGE/LASHING, DEBRIS PROVIDED TIME BETWEEN DISCHARGE PORT AND

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

NEXT LOADPORT IS SUFFICIENT FOR THE CREW TO PERFORM ADEQUATE CLEANING AND WASHING DOWN AND THE AMOUNT OF DUNNAGE IS WITHIN REASONABLE RANGE SO THAT CREW CAN REMOVE THEM WITHOUT INTERRUPTING
THE VESSEL'S ROUTINE WORKS, WHICH TO BE ALWAYS AT CHARTERERS TIME. COST OF FRESH WATER FOR WASHING DOWN OF HOLD(S) TO BE FOR CHARTERERS' ACCOUNT.

### Cl.61 Redelivery Dirty

Charterers to pay USD ████ lumpsum in lieu of hold cleaning excluding removal/disposal of dunnage/lashing debris which to be for Charterers' time/risk/account.

### Cl.62 Orinoco River Trading

Orinoco River to be allowed but upto Puerto Ordaz only. When trading Puerto Ordaz, Master must ensure dispatch of vessel by deballasting the vessel with safety whilst proceeding up river to Puerto Ordaz, Venezuela bearing in mind that the loader is rated at 6,000 tons per hour and the average loading rates is up to 4,800 tons per hour. Owners will do best to ensure that vessel's ballasting/deballasting capacity throughout the charter period will be minimum 1,000 water tons per hour and Master will endeavor to arrive at loading ports with the minimum ballast required for the ship's safety but ballast quantity always to be at Master's direction. In the event that this guarantee minimum capacity is not maintained any proven delay in loading or discharging as a result of this failure to be off-hire. All pilotage for Charterers' account.

### Cl.63 Lightening and Top Off

The vessel shall carry out lightening and top-off operations by arriving in the open operational areas with her holds ready to be lightened/topped off, weather permitting, and shall assist by having her crew take and/or pass mooring ropes required by the Master of the lightening/top-off vessel, both for mooring/unmooring of the ocean vessel alongside it. While alongside, the vessel is to carefully tend all moorings and frequently verify her draft.

Furthermore, the Master shall at all times cooperate fully with Charterers and/or their agents to expedite the transfer of cargo and the vessel shall maintain a draft, when feasible, as requested by the Master of the lightening/top-off vessel, to facilitate the operation. Suitable fenders will be supplied by Charterers during all lightening/top-off operations, however, vessel to provide free

of charge any fenders that may be on board. The area used for lightening/top-off operations is to be a customary and usual area where such operations normally take place.

The Master may at any time order his vessel to sail if he considers it unsafe for her to remain double-banked.

## Cl.64 Ballasting/De-Ballasting

Vessel to ballast/de-ballast clean water ballast tanks only including floodable hold(s), if required by Charterers or their Agents at any time during loading and/or discharging, free of expense to Charterers, but in Charterers' time. All ballasting/de-ballasting shall be at the discretion of Master having due regard to stability and seaworthiness of the vessel. Whenever practicable or required by law at the next port of call, the vessel is to replace ballast taken in port or coastal waters with clean seawater ballast. Owners guarantee that the vessel will always be maintained in a safe condition during ballast operations. If at any time solid ballast is required, all expenses for same, including time used for loading and discharging such ballast, bunkers consumed during such period, and time used for cleaning holds after the discharge of such solid ballast, shall be for Charterers' account.

The vessel is capable of ballasting No.3 hold, and indeed the vessel normally proceeds to loading ports with No.3 hold in ballast. In such instances Owners, Master and crew will do their utmost to de-ballast and dry such hold as quickly as possible. However, it is understood that time used for such de-ballasting and drying up of hold No.3 is not to be considered as off-hire time.

## Cl.65 Mobile Crane

Del.

## Cl.66 Inspection Rights

The Charterers shall have the right and privilege of having their representatives visit the vessel while in port, provided written pre-notice is given and without interference with vessel's normal operation. Charterers' representatives shall have free access to the vessel's cargo holds and decks only and the Master, officers and crew of the vessel shall co-operate with the Charterers' representative.

## Cl.67 Maintenance

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Throughout the charter period Owners, whenever the passage of time, wear and tear or any event requires steps be taken to maintain or restore the conditions stipulated in this charter, shall exercise due diligence so to maintain or restore the vessel.

Owners to maintain vessel's normal speed and consumption. However, not withstanding anything else contained in the Charter Party, Owners not to be responsible when bottom fouling is resulted from a prolonged stay in port/anchorage and/or idling for a running period of 15 days or more under Charterers' arrangement and orders in which case Charterers to arrange thorough cleaning/scrubbing/repainting to the bottom at their time and expenses. Otherwise, Owners not to be responsible for the vessel's speed and consumption with effect from vessel's departure from such port or anchorage.

### Cl.68 Shipboard Personal and Their Duties

A) Upon delivery and throughout the duration of this charter:

   i) vessel shall have a full and efficient complement of Master, officers and crew for a vessel of her tonnage and design, who shall in any event not be less than the number required by the laws of the flag state and who shall be trained to operate the vessel and her equipment competently and safely;

   ii) all shipboard personnel shall hold valid certificates of competence in accordance with the requirements of the law of the flag state;

   iii) all shipboard personnel shall be trained in accordance with the relevant provisions of the International Conventions on Standards of Training, Certification and Watch Keeping for Seafarers 1978 as amended 1995, and/or other rules or regulations that may be promulgated from time to time;

   iv) there shall be on board sufficient personnel with a good working knowledge of the English language to enable cargo operations at loading and discharging places to be carried out efficiently and safely and to enable communications between the vessel and those loading the vessel or accepting discharge therefrom to be carried out quickly and efficiently.

B) Owners guarantee that throughout the charter period the Master shall, with the vessel's officers and crew, unless otherwise ordered by Charterers:

   i) prosecute all voyages with the utmost dispatch;

   ii) render all customary assistance and;

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

iii)     load and discharge cargo as rapidly as possible when required by Charterers or their agents to do so, by night or day, but always in accordance with any applicable laws of the flag state.

### CL.69 Vessel Appearance

Throughout the duration of this charter, Owners to maintain the vessel's exterior hull, accommodation block, main deck, hatches and hatch covers in a clean and well painted condition. Further more, all plimsoll and draft marks are to be clearly marked and readable at all times.

### Cl.70 Services

Hire to include but not to be limited to the following services from the vessel's officers and crew:

1. Docking and undocking;
2. Shifting and warping of the ship during loading and/or discharging;
3. Bunkering;
4. a) Opening and closing of hatches in preparation for, during and after loading and discharging (including times when weather may adversely affect condition of cargo);
   b) The officers and crew to shape up the vessel's hatches as much as possible as far as weather permits prior to vessel's arrival at loading and/or discharging port or place so as to immediately commence loading or discharging operations;
5. The crew are endeavor to sweep and/or wash the holds and any other cargo compartments between voyages to make the vessel ready for the next cargo acceptable to competent authorities subject to Clause No. 60;
6. Supervision of loading and discharging;
7. All overtime of the Master, officers and crew;
8. When certain of the above services are prohibited by shore labor regulations, the Master shall comply with such regulations but shall use his endeavors to perform the services at sea when possible.

### Cl.71 Representation

Charterers will remit to Owners with each hire payment a lumpsum equivalent of U.S.$1,250.00 per month or pro rata for the whole Time Charter period. This payment shall be in consideration of: all victualling as per line 171, cost of incidentals such as cigarettes, drinks and pretty expenses incurred by Master/officers of the vessel on Charterers' behalf; the cost of radio

# MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

telegrams, telexes, fax ad telephone communications made by the Master/Officers to the Charterers or their Agents or servants in direct performance of this Charter Party.

Figures to be reviewed/adjusted if it turns out to be unreasonably high or low.

## Cl.72 Smuggling

Any delay, expenses and/or fine incurred on account of smuggling shall be for Owners' account if caused by the Master and/or officers and/or crew, or shall be for Charterers' account if caused by Charterers supercargo and/or their servants or agents.

## Cl.73 Charterers' Equipment

The Master is to keep a record of all Charterers gear, equipment, dunnage and/or stores supplied to the vessel and to maintain same in good condition. Such gear, equipment, dunnage and/or stores to be returned to Charterers prior to redelivery of the vessel to Owners, or if requested by Charterers at any time during the period of charter, in like good condition as supplied (fair wear and tear excepted). Charterers to redeliver the vessel with lashing materials as on board.

## Cl.74 Letter of Indemnity

In the event that the original Bills of Lading are not available at the destination when the vessel is ready to discharge, Owners, at the request of Charterers, agree to release the cargo without the presentation of the original Bills of Lading provided that, prior to delivery of the cargo, Charterers have arranged to have submitted to the Owners a Letter of Indemnity as per Owners' P. and I. Club's form, signed by Charterers first on fax prior to commencement of discharge, and the original letter to be couriered to Owners immediately, agreeing to fully indemnity and hold Owners and/or the vessel and/or the Master and/or Agents harmless against any consequences resulting from the vessel releasing cargo without presentation of the original Bills of Lading and also to remain fully responsible for all damages and/or consequences that may arise out of the release of the cargo as above stated.

## Cl.75 Blacklist

Owners warrant that the vessel is not blacklisted by any country and they will not, during the currency of the charter, cause the vessel to be black-listed by any country, except for case vessel

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

should be become blacklisted by any country for reason of port(s) called by vessel earlier under this Charter Party.

### Cl.76 Unique Identifier (U.S.A.)

Charterers undertake, unless otherwise agreed, that they or their Agents will, in respect of cargo to be discharged at a U.S. port, arrange proper documentation with a Unique Identifier as required by U.S. Customs regulations. If at any time prior to issuing Bills of Lading for cargo carried hereunder, it becomes necessary to change this procedure, Owners and Charterers will agree on a mutually acceptable alternative. In all cases the Owners may review the Unique Identifier prior to customs clearance being sought. Owners shall not be held responsible in the event of any irregularity in Unique Identifier.

### Cl.77 U.S.A. Sea Carrier Initiative Agreement (SCIA)

Owners warrant that they have entered into SCIA with United States Customs either directly or via a collective representative organization recognized by U.S. Customs and they guarantee compliance with the provisions and obligations of United States Anti-Drug Act of 1986 in respect of any voyage(s) to or from and/or between U.S.A. ports during the currency of this Charter Party.

Furthermore, Owners hereby indemnity Charterers and shall hold them harmless in respect of any drug claims and/or penalties imposed by United States Authorities that are related to drug, smuggling or any other illegal activities. Any time lost by reason of any violation of United States Federal, State or local drug laws shall be off-hire.

This clause shall become inoperative if the claims/penalties are result of the act, default, omission or negligence on the part of the Charterers, their agents or servants.

### Cl.78 Punctual Payment

Referring to lines 129 and 130, where there is any failure to make "punctual and regular payment" due to oversight or negligence or error or omission of Charterers employees, bankers or agents or otherwise for any reason where there is absence of intention to fail to make payment as set out, Charterers shall be given by Owners two (2) banking days' notice to rectify the failure; where so rectified the payment shall be deemed as punctual and regular payment.

# MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

## Cl.79 Agency

Charterers agents may act as Owners' agents to attend to minimal husbanding matters, such as handling mail, shorepass, taxi rides and minor stores requirements without agency fee. Any expenses actually incurred thereby shall be for Owners' account. If Owners require activities such as, but not necessarily limited to, crew repatriations, hospitalization, general average, major stores requirements, ship repairs, Owners are to either appoint their own Agents or to pay Charterers' appointed agents the normal additional agency fee and associated charges for any such husbandry, if so requested.

## Cl.80 Arbitration/Litigation

Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at London, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision, or that of any two of them, shall be final and for the purpose of enforcing any award this agreement may be made a rule of the Court. English law is to apply. The arbitrators shall be commercial men conversant with shipping matters.

It is hereby agreed that all claims below US$50,000.- excluding interest and costs shall be settled as per current LMAA small claims procedures.

## Cl.81 Titles

The titles to clauses and sub-clauses of this Charter Party shall not in any way affect the interpretation thereof.

## Cl.82

N/A

## Cl.83 Bottom Fouling

If the vessel's speed capacity is reduced as a result of the bottom growing fouled by reason of the vessel being in a port for a period in excess of 15 days, the Owners are not to be responsible for reduction in speed of the vessel up until such time as her next scheduled dry-dock.

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Cl.84 Cosco Prefix

Deleted.

Cl.85 Drydocking

Owners to give 3 months prior notice in respect of intended date, period and port for drydocking. Charterers shall upon receipt of the notice from Owners agree to schedule the vessel to Singapore/Japan range within 4 months period, release the vessel from employment free of cargo for the purpose of drydocking.

Vessel is to go offhire at the time/place where she deviates from her course and to onhire when she is again ready at Charterers disposal in the same equidistant position at Charterers' option, as she went offhire. If vessel is to drydock at a port where Charterers are loading/dischartging/bunkering her, then vessel to go offhire on leaving load/discharge/bunker place, and to go onhire again on leaving dock. Owners to give Charterers 7/5/3/1 days notice of resumption of hire.

Charterers have the option to add the offhire time for drydocking to the charter period at hire rate applicable for the period in question.

Cl.86 Cargo Exclusions

Vessel can be employed in carry lawful merchandise cargoes but excluding dangerous/ hazardous/ injurious/inflammable/ explosive cargoes, goods, commodities as listed in the latest IMO D.G.CODE and or any subsequent modifications/amendments. Therefore, and always excluding cargoes restricted by as follows :

ALL UNLAWFUL CARGOES, AMMONIUM NITRATE(FERTILIZER GRADE ALLOWED),AMMONIUM SULPHATE, AMMUNITION, ANIMALS, ANY KINDS OF ACIDS, ANY KINDS OF CONTAINER, ANY KINDS OF HIDES, ANY KINDS OF LOGS/MAHOGANY, ARMS, ASBESTOS, ASHER, ASPHALT, BITUMEN OR ANY OF IT'S PRODUCTS, BLACK POWDER, BLASTING CAPS, BONES, BORAX IN BULK, CALCIUM CARBIDE, CALCIUM CHLORIDE, CALCIUM HYPOCHLORIDE, CAUSTIC SODA. CEMENT. CHARCOAL, COPRA AND ITS PRODUCTS, COPRA PELLETS/PRODUCTS, COTTON, CREOSOTED GOODS, DANGEROUS CHEMICALS, DECK CARGO, DETONATORS, DIRECT REDUCED IRON ORE,DYNAMITES, EXPLOSIVE OF ANY KINDS, FERRO SILICON, FISHMEAL, FUELS, HARMFUL AND CORROSIVE

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

FERTILIZER, HBI AND ANY CARGOES EMBARGOED BY THE UN, HOT BRIQUETTED IRON(H.B.I.),INDIAN COAL, INDIAN COKE, ISOTOPE, LIVESTOCK, LOADED BOMBS, MANIOC PELLETS, MEALS EXCL SOYBEAN MEAL, MEAT BONE MEAL, METAL CUTTINGS, MOTOR BLOCKS AND METAL TURNINGS/SHAVINGS/ BORINGS, MOTOR SPIRITS, NAPHTHA, NITRATE SULPHATE, NUCLEAR CARGO/WASTE/MATERIALS/SUBSTANCES OR IT'S PRODUCTS. NUCLEAR FUELS, NUCLEAR ISOTOPES, OIL CAKES, PETROLEUM OF ITS PRODUCTS, PETROLEUM COKE, PITCH, POND COAL, RADIOACTIVE MATERIALS/WASTE/ CARGOES OR IT'S PRODUCTS, RAPE SEED EXPELLERS, RESIN, RICE, ROCK SALT, SALTPETER, SCRAP, SHAVINGS, SLUDGE ORE, SPONGE IRON(DIRECT REDUCED IRON PELLETS), SULPHUR, SUNFLOWER SEED EXPELLERS. TAR AND ITS PRODUCTS, TNT EXPLOSIVES, WAR MATERIALS, WASTE PAPER, WASTES, ZINC & ZINC ASHES.

ALL CARGOES TO BE PREPARED / LOADED / STOWED / CARRIED AND DISCHARGED STRICTLY IN ACCORDANCE WITH IMO AND LOCAL REGULATIONS. CHARTERERS TO ISSUE CERTIFICATE BY COMPETENT AUTHORITIES FOR CARRIAGE STATING THE OIL AND MOISTURE CONTENT AND ARE TO PROVIDE MUTUALLY AGREED MONITORING EQUIPMENT FOR THE VOYAGE.

ANY GOODS OF A DANGEROUS, FLAMMABLE OR CORROSIVE NATURE SHALL BE CARRIED ONLY IF PERMITTED BY AND IN ACCORDANCE WITH THE REQUIREMENTS OR RECOMMENDATIONS OF I.M.O. AND/OR THE QUTHORITIES OF THE STATE OF THE VSL'S REGISTRY AND OF THE STATES OF PORTS OF SHIPMENT AND OF ANY INTERMEDIATE STATES OR PORTS THROUGH WHOSE WATERS THE VSL MUST PASS.

HOWEVER CHARTERERS HAVE OPTION TO CARRY TOTAL MAXIMUM 5 DIRTY CARGOES PER ANNUM AMONG SALT/SCARP/PETCOKE/SULPHUR/BULK CEMENT/CEMENT CLINKER/CONCENTRATE AND MAX 1 OF ONE KIND, BUT NOT TO BE LAST CARGO PRIOR TO REDEL, AND NOT BE CARRIED CONSECUTIVELY.

Salt-Protective Clause :
Charterers are permitted to carry salt , if exercised, on following conditions:

a) Charterers undertake to use holds a less as possible, provided vessel's stability, trim and stress permitting.

b) Before loading, all holds assigned for salt to be lime-washed by Charterers at their time/expense/ risk to the satisfaction of Master and independent surveyors appointed by Charterers at their time/expense

c) Cargo to be loaded/stowed/trimmed/discharged strictly according to latest IMO and/or any other latest regulations/rules applicable to such cargo

d) All fresh water used for irrigation onto salt during loading/voyage/discharging to be for Charterers' accounts.

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

e) After discharge Charterers undertake thorough cleaning of holds including removal of lime wash coating and to supply sufficient fresh water at their expense for washing down of all holds to the satisfaction of Master.

f) Any extra expenses resulting therefrom/incurred thereby (such as hold cleaning to Master's satisfaction/hold survey etc) and any detention through any of above caused to be for Charterers' account.

g) Charterers are allowed to use ship's Crew to perform lime-washing and removal of same and re-painting as necessary against paying USD 8, 500 lumpsum, but always subject to prior consent of Owners/Master/Crew and local regulations permitting, and all time used to be for Charterers' account. Owners/Master are not held responsible for passing hold cleanliness for loading next cargo and for any consequences whatsoever caused due to such arrangement.

Sulphur Protective Clause :
(Charterers will endeavour to seek cargo other than sulphur if possible for the initial voyage after delivery)

Charterers have liberty to carry sulphur during period of this Charter party on following conditions :

a) Charterers undertake to use holds as less as possible, provided vessels stability trim and stress permitting.

b) Before loading all holds assigned for sulphur to be lime-washed by Charterers at their time/expense/risk to satisfaction of Master and independent surveyors appointed by Charterers at their expenses.

c) Cargo to be loaded/stowed/trimmed/discharged strictly according to latest IMO and/or any other latest regulations/rules applicable to cargo.

d) After discharge Charterers to supply sufficient fresh water at their expense for washing down of all holds.

e) Any extra expenses resulting therefrom/incurred thereby and any detention through any of above causes to be for Charterers' account.

Charterers are allowed to use ship's Crew to perform lime washing/removal/cleaning as necessary against paying USD 8,500 lumpsum, but always subject to prior consent of · Master/Crew and local regulations permitting. and all time so used shall be for Charterers' account.

Bulk Cement Protective Clause :
Charterers have liberty to carry bulk Cement during period of charter on following conditions:

a) Charterers undertake to use holds as less as possible, provided vessel's stability trim and stress.

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

permitting.

b) Should any additional/special washdown of holds before loading be required/recommended by independent surveyors appointed by Charterers at their expenses, such washdown to be arranged by Charterers at their expenses.

c) Charterers have the option to cut holes in vessel's hatch covers for loading bulk cement on following conditions :

1) All cutting and restoring of the holes to be fully supervised/attended/approved by vessel's classification surveyor.

2) After completion of restoring holds, if vessel's class surveyor requires a hose test to establish
integrity of the rewelding, same to be done at Charterers' time and at their expense.

3) All time for preparing cutting and restoring upto classification surveyor's satisfaction as well as all expense including classification surveyor's fees and expenses shall be for Charterer's account.

The liberty granted to Charterers herein is subject to Charterers' guarantee that the above mentioned commodities will not be carried in consecutive shipments/voyages.

d) After loading Charterers undertake to arrange at their expenses any special/extra trimming and/or levelling of cargo which shippers may require and same to be for Charterers' time and expense. Cargo to be loaded in accordance with IMO regulations.

Charterers are allowed to use ship's Crew to perform cleaning as necessary against paying USD 8,500 lumpsum but always subject to prior consent of Master/Crew and local regulations permitting. and all time so used shall be for Charterers' account.

SCARP Protective Clause :

A) THE SCRAP MENTIONED HEREIN ONLY LIMITED TO HMS 1+2 AND/OR SHREDDED SCRAP SPECIFICALLY EXCLUDING MOTOR BLOCKS AND TURNINGS AND ALSO METAL BORINGS AND CUTTINGS.

B) CHARTERERS UNDERTAKE THAT LOADING OF FIRST LAYER OF SCRAP NOT TO BE RELEASED UNTIL LOWERED AS CLOSE AS POSSIBLE TO TANKTOP AND NOT TO BE DUMPED/ DROPPED DURING LOADING. FIRST LAYER OF SCRAP TO BE LOADED AT HEIGHT AND TO BE EVENLY STOWED/ TRIMMED TO SATISFACTION OF MASTER BEFORE LOADING BALANCE OF CARGO.

C) CHARTERERS UNDERTAKE TO SUPPLY ON BOARD AT THEIR EXPENSE, DUNNAGES AND/OR OTHER MATERIALS WHICH ARE NECESSARY AND REASONABLE TO PROVIDE SAFE PROTECTION FROM DAMAGE BY LOADING SCRAP.

D) PRIOR TO LOADING SCRAP, HOLD CONDITION SURVEY TO BE CONDUCTED BY AN INDEPENDENT SURVEYOR APPOINTED BY CHARTERERS IN CHARTERERS TIME AND COSTS TO BE FOR OWNER'S ACCOUNT, AND SAME TO BE DONE IMMEDIATELY AFTER COMPLETION OF DISCHARGE.

E) IN CASE OF ANY DAMAGE TO THE VESSELS AUSTRALIAN HOLD LADDERS AND

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

ANY OTHER PARTS/PLACES OF THE VESSEL CAUSED BY LOADING SUCH SCRAP CARGO (EXCEPT FOR DAMAGE TO HOLD PLATE WHICH TO BE CONSIDERED FAIR WEAR AND TEAR), CHARTERERS TO BE RESPONSIBLE FOR UPGRADING/REPAIRS TO BRING AUSTRALIAN HOLD LADDERS AND OTHER PARTS/PLACES TO SAME CONDITION AS PRIOR TO LOADING SCRAP BEFORE COMMENCEMENT OF NEXT VOYAGE IN CASE NEEDED.

F) ANY DIRECTLY RELATED EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY (SUCH AS HOLD CLEANING TO MASTERS SATISFACTION/HOLD SURVEY ETC.) AND ANY DETENTION THROUGH ANY OF ABOVE CAUSES TO BE FOR CHARTERERS ACCOUNT.

g) Charterers are allowed to use ship's Crew to perform hold cleaning after loading the scrap against paying USD 7,500 lumpsum, but always subject to prior consent of Owners/Master/Crew and local regulations permitting, and all time used to be for Charterers' account. Owners/Master are not held responsible for passing hold cleanliness for loading next cargo and for any consequences whatsoever caused due to such arrangement.

Petcoke Protective Clause :
Charterers are at the liberty to carry petcoke during period of this Charter on following conditions :

a) Petroleum coke mentioned herein is only limited to the type of non-hazardous/ non-dangerous green delayed type and/or calcined type.

b) If Charterers exercise such option, Charterers undertake to use holds as less as possible, provided vessel's stability, trim and stress permit.

c) Such cargo to be loaded/stowed/trimmed/discharged strictly according to latest IMO and/or any other latest regulations/rules applicable to such cargo.

d) Should any additional/special washdown of holds before loading be reasonably recommended/proposed/required by Master, Charterers undertake to arrange the same at their time/expense.

e) After discharge Charterers to arrange at their expense/time of any additional/special washdown of holds.

f) Charterers are allowed to use ship's Crew to perform lime-washing and removal of same and re-painting as necessary against paying USD 7,500 lumpsum, but always subject to prior consent of Owners/Master/Crew and local regulations permitting, and all time used to be for Charterers' account. Owners/Master are not held responsible for passing hold cleanliness for loading next cargo and for any consequences whatsoever caused due to such arrangement.

-OWNS ADDTIONAL CONCENTRATE LOADG PROTECTIVE CLS
-------------------------------------------------
VESSEL IS TO LOAD CONCENTRATE AT ALASKA, BC, USWC, AUSTRALIA,

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

ARGENTIA, CHILE ONLY.
FOR LOADING CONCENTRATES THE STOWAGE TO BE WITHIN VESSEL'S
STRENGTH. ALL NECESSARY SEPARATION IF REQUIRED TO BE PROPERLY
ERECTED UP TO SURVEYOR'S AND MASTER'S SATISFACTION AT CHARTERER'S
EXPENSE AND TIME AND CARGO TO BE LOADED, STOWED, SEPARATED,
TRIMMED AND DISCHARGED ETC., ACCORDING TO LATEST IMO AND LOCAL
AUTHORITIES REGULATIONS. AT MASTER'S REQEST, CHARTERERS TO ALLOW
OWNERS TO APPOINT P AND I SURVEYOR OR INDEPENDENT SURVEYOR TO
SUPERVISE LOADING, STOWING, EXECUTION OF SEPARATION, ETC., TO
SURVEYOR'S AGREEMENT AND MASTER'S SATISFACTION AT CHARTERER'S TIME
AND EXPENSES.
CHARTERERS TO SUPPLY VESSEL SHIPPERS CERTIFICATE OF TRANSPORTABLE
MOISTURE LIMIT AND CARGO MOISTURE CONTENT EVIDENCING CARGO
COMPLIANCE WITH LATEST IMO REGULATION. AFTER LOADING, CARGO MUST
BE PROPERLY TRIMMED AT CHARTERER'S TIME AND EXPENSE TO SURVEYOR'S
SATISFACTION.
IT IS UNDERSTOOD THAT LOADING TERMS FOR LOADING CONCENTRATES TO BE
WEATHER WORKING DAYS. DURING LOADING, MASTER HAS THE RIGHT TO STOP
LOADING AND CLOSE THE HATCHES IF RAINS AFFECT CONCERTRATES
MOISTURE CONTENT. ANY SUCH STOPPAGE IS NOT CONSIDERED TO BE OFF-HIRE
UNDER THIS CHARTER PARTY.

Charterers are allowed to use ship's Crew to perform the hold cleaning necessary against paying
USD 6,000 lumpsum, but always subject to prior consent of Owners/Master/Crew and local
regulations permitting, and all time used to be for Charterers' account. Owners/Master are not
held responsible for passing hold cleanliness for loading next cargo and for any consequences
whatsoever caused due to such arrangement.

### Cl.87 Cargo Gear

Owners shall maintain the cargo handling gear of the ship in good working order which is as
follows:(see clause 28) providing gear (for all derricks or cranes) capable of lifting capacity as
described. Owners shall also provide on the vessel for night work lights sufficiently as on board,
but all additional lights over those on board shall be at Charterers' expense.

The Charterers shall have the use of any gear on board the vessel. If required by Charterers, the
vessel shall work night and day and all cargo-handling gear shall be at Charterers' disposal
during loading and discharging. In the event of disabled cargo-handling gear, or insufficient
power to operate the same, the vessel is to be considered to be off-hire to the extent that times is
actually lost to the Charterers and Owners to pay stevedore stand-by charges occasioned thereby
but maximum one shift. If required by the Charterers, the Owners are to bear the cost of hiring
shore gear in lieu thereof, in which case vessel is to be fully onhire.

Cl.88

# MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

All the agreed speed figures will be about and basis good weather conditions up to and including Beaufort Force 4 and Douglas Sea State 3.

Cl.89

Del.

Cl.90

This fixture is to be kept strictly private and confidential.

Cl.91

N/A

Cl.92

The Charterers shall supply bunkers of a quality suitable for burning in the vessel's engines and auxiliaries and which conform to the specification ISO 8217: 2005 (E) grade RMG 35. The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuel or fuels not complying with the agreed specification(s).

Additionally, if bunkers supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the vessel's engines or auxiliaries, the Owners shall not be held responsible for any reduction in the vessel's speed performance and/or increased bunker consumption, nor for any time lost and any other consequences.

Cl.93

In the event of the vessel being boycotted by ITF, delayed or rendered inoperative by strikes, labor stoppages, or by any other difficulties due to vessel's flag ownership, crew, terms of employment of officers or crew, or any other vessel under the same ownership, operation or control, all time lost is to be considered as off-hire, and expenses and liabilities incurred thereby, to be for Owners' account.

Cl.94

Pacific Russian ports to be excluded from trading. Charterers not to trade vessel to places/area where vessel is likely to be infested with AGM.

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

### Cl.95 BIMCO ISM CLAUSE

BIMCO STANDARD ISM CLAUSE FOR VOYAGE AND TIME CHARTER PARTIES to be applied.

### Cl.96 Ice Area

Charterers not to trade the vessel to Gulf of St. Lawrence or St. Lawrence River between 1st January and 31st March in any given year.

### Cl.97 Drydocking/Crew Repatriation

Deleted.

### Cl.98 Trading Limit

Time-Charter trading worldwide via safe anchorage(s), safe berth(s), safe port(s), always afloat, always accessible, always within INSTITUTE WARRANTY LIMITS, always within WAR RISK TRADING WARRANTIES except NAABSA at such places where it is customary for similar size vessels to safely aground in Argentina, Uruguay and South Brazil only, Charterers undertake that the vessel can safely lie aground at all times of tide. If Charterers are found legally liable, damage to the vessel's bottom to be for Charterers' account and to be repaired by Owners according to the recommendations of the classification society during next docking or as otherwise required by the classification society.

Excluding all war and war like zones which to be determined by Owner's war risk underwriters and any other places which vessel is from time to time prohibited to call by the National Authorities under which vessel is registered, and any countries prohibited to call from time to time by the United Nations.

Charterers have option to break IWL subject to Owners' and their underwriters' prior consent which is not to be unreasonable withheld against Charterers paying Owners additional premium on hull and machinery as per vouchers from vessel's underwriters. But the subject vessel shall not be required to proceed to ice zone or force ice or follow ice-breakers.

Trading Exclusions:

ALBANIA, ANGOLA(INCLUDING CABINDA), BOSNIA-HERZEGOVINA, C.I.S./RUSSIAN PACIFIC PORTS, CUBA, CYPRUS, DEMOCRATIC REP.OF CONGO, EIRTREA, GREAT LAKES, GULF OF AQABA EXCLUDING AQABA PORT. HAITI, HONDURAS, IRAQ, ISRAEL, ISRAELI CONTROLLED COUNTRIES / AREAS,

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

FINDLAND ,KAMPUCHE, LEBANON, LIBIERIA (INCLUDING ABKHAZIA),
LIBYA(INCLUDING GULF OF SIDRA/SIRTE), NICARIGUA, NAMIBIA, NORTH KOREA,
ORINOCO RIVER, EL SALVADOR, SIERRA LEONE, SOMALIA, SRI LANKA, SYRIA,
SYRIAN CONTROLLED COUNTRIES / AREAS, TURKEY OCCUPIED CYPRUSH,
PEOPLE'S REPUBLIC OF YEMEN (North & South YEMEN) (BUT BUNKERING OK).
YUGOSLAVIA FEDERAL REPUBLIC OF (SERBIA AND MONTENEGRO) AND EX-
YUGOLAVIAN COUNTRIES (BUT SOVENIA NAD CROTIA ALLOWED), ZAIRE

NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY, THE
CHARTERERS HAVE THE OPTION TO DIRECT THE VESSEL TO TRADE TO AREAS
LISTED IN THE "WAR RISK TRADING WARRANTIES"
AND/OR "HULL WAR, STRIKES, TERRORISM AND RELATED PERILS LISTED AREAS"
WHICH DETERMINED BY THE VESSEL'S WAR RISKS UNDERWRITERS. PROVIDED
PRIOR CONSENT OBTAINED FM THE VESSEL'S WAR RISKS UNDERWRITERS AND
OWNERS. IF ADDITIONAL PREMIUMS INCURRED THE SAME TO BE FOR
CHARTERERS' ACCOUNT. ADDITIONAL PREMIUMS NOT TO EXCEED THOSE OF
THE LLOYD LONDON PREMIUM. IT BEING UNDERSTOOD THAT CHARTERERS ARE
NOT ALLOWED TO TRADE VESSEL TO/FROM PLACES/AREAS WHERE AN ACTUAL
WAR IS IN PLACE.

CONWARTIME 2004 TO BE INCLUDED IN C/P

SHOULD THE POLITICAL OR SOCIAL SITUATION IN THE WORLD CHANGE SO AS
TO ACCEPT AS REGULAR TRADE AREAS IN THE SHIPPING INDUSTRY ANY
COUNTRIES OR PLACES LISTED IN THE TRADE EXCLUSIONS UNDER THIS C/P,
THEN SUCH AREAS OR PLACES OR COUNTRIES MAY BE EXCEPTED FROM THE
TRADE EXCLUSIONS SUBJECT TO THE OWNERS' PRIOR CONSENT, WHICH SHALL
NOT BE UNREASONABLY WITHIIELD AND APPROVAL TO BE UNDERTAKEN BY
THE OWNERS' UNDERWRITERS OF HULL AND MACHINERY INSURANCE.
ON THE OTHER HAND, IF A COUNTRY OR COUNTRIES OR A PORT OR PORTS
OTHER THAN LISTED IN THE TRADE EXCLUSIONS UNDER THIS C/P MUST BE
INCLUDED INTO THOSE TRADE EXCLUSIONS DUE TO CHANGE IN THE POLITICAL
OR SOCIAL SITUATION OF SUCH PORTS OR COUNTRIES DURING THE CURRENCY
OF THIS CHARTER, THE OWNERS HAVE THE RIGHT TO INCLUDE SUCH AREA(S) OR
PORT(S) OR COUNTRY/COUNTRIES INTO THE TRADE EXCLUSIONS UNDER THIS
C/P SUBJECT TO THE CHARTERERS' PRIOR CONSENT, WHICH SHALL NOT BE
UNREASONABLY WITHHELD.

THE VESSEL SHALL NOT BE ORDERED TO TRADE DIRECTLY BETWEEN TAIWAN
AND MAINLAND CHINA , UNLESS SUCH DIRECT TRADING BETWEEN TAIWAN AND
MAINLAND CHINA BE LEGALLY ALLOWED UNDER GOVERNING LAWS.

THE VESSEL SHALL NOT BE EMPLOYED FOR CABOTAGE TRADE IN PERSIAN GULF
AND INDIA.

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY, IRAN IS ALLOWED PROVIDED THERE ARE NO ANY U.N SANCTIONS.

### Cl.99 Loading Steel Cargo

Where the vessel is required to load steel cargo, Owners shall be entitled to carry out a pre-loading survey for their account using a P&I Club approved surveyor, a copy of whose report is to be given to Charterers: provided that if Charterers wish to arrange their own pre-loading survey, the same shall be considered a joint survey, and Owners shall bear one half of the cost.

### Cl.100 Drugs-Contraband- Stowaways

Owners shall be responsible for any actual or alleged presence on board the vessel (whether before or after delivery) of any illegal drugs or contraband or stowaways, regardless of their origin unless Charterers' employees, agents or servants have caused the same, and shall indemnify Charterers and hold them harmless from the consequences thereof, including any claims, fines and penalties.

"BIMCO Stowaway Clause for Time Charters" is hereby incorporated in this Charter Party.

### Cl.101 Hire

See line 98.

First 15 days hire and bunker on delivery value to be paid within 3 banking days after vessel' delivery. Thereafter every 15 days hire to be paid in advance.

Charterers are entitled to deduct from last sufficient hire payments value of estimated bunker on redelivery quantity.

Owner's bank account:



### Cl.102

N/A

# MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Cl.103 On Deck Cargo

On deck cargo not allowed.

Cl.104

N/A

Cl.105

Vessel not to be employed for 3 or more consecutive voyage if each voyage duration is less than 20 days.

Cl.106

Neither the Charterers nor their agents shall permit the issuance of any bill of lading or other documents evidencing a contract of carriage (whether or not signed) on behalf of the Owners or on the Charterers' behalf or on behalf of any sub-Charterers incorporating where not compulsorily applicable the Hamburg rules or any legislation imposing liabilities in excess of Hague Visby Rules. Charterers shall indemnify Owners against any liabilities, loss or damage which may result from any breach of the provision of this Clause. No through or liner Bill of Lading to be issued.

Cl.107

Following clauses to be incorporated in this Charter Party:
- U.S. Customs 24 Hours Rule Clause
- U.S. Customs-Trade Partnership Against Terrorism (C-TPAT) Clause
  Charterers guarantee that cargo to/from American ports will not be banned by us officials.

Cl.108

Taxes and/or dues and/or charges whatsoever, imposed on cargo by any local or national authorities, arising out of trade under this Charter Party to be borne by Charterers.

Cl.109

The Owners are permitted to sell the vessels during currency of this Charter Party subject to Charterers' approval which not to be unreasonably withheld. The Owners shall give sufficient prior sale notice to Charterers together with Buyers full styles including bank reference, if any.

## MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Sale of the vessels shall not interfere Charterers use of the vessels and performance of this Charter Party. The Buyers shall guarantee performance of this Charter Party and to remain responsible for this Charter for the balance period.

Cl.110

Deleted.

Cl.111 : Bimco U.S. Customs Advance Notification/AMS Clause for Time Charter Parties.

(a) If the vessel loads or carriers cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and should undertake the role of carrier for the purposes of such regulations and shall in their own name, time and expenses:

i) Have in place a SCAC (Standard Carrier Alpha Code);
ii) Have in place an ICB (International Carrier Bond);
iii) Provide the Owners with a timely confirmation of i) and ii) above; and
iv) Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs and provide the Owners at the same time with a copy thereof.

(b) The Charterers assume liability for and shall indemnity, defend and hold harmless the Owners against any loss and/or damage whatsoever ( including consequential loss and/or damage) and/or any expenses, fines, penalties and other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the vessel shall remain on hire.

(c) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for those amounts.

(d) The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall without prejudice to the identity of carrier under any Bill of Lading, other contract, law or regulation.

Cl.112 Redelivery range

At on dropping last outward sea pilot station, within trading limited one safe port, Port in Charterers' option any time day or night, Sunday and holidays included : as followings : Aden/Japan range in case Persian Gulf then Passing Muscat Outbound or Charterers' option Australia/New Zealand range excluding Tasmania or Charterers' option Prince Rupert/Los

# MV. XIAMEN SKY/DAEBO SHIPPING – RIDER CLAUSES CP DD 27TH NOV.,2006

Angeles range or Charterers' option Boston/Galveston range or Charterers' option Skaw/Passero range.

Cl. 113
Deleted.

Cl. 114
Hire to be calculated on the basis of G.M.T.

Time of delivery/redelivery to be based on G.M.T. but layday/canceling day to be local time.

CL. 115

Any bank charges for hire remittance should be for Charterers' account.

OWNERS:

PRINTED NAME: ............................................TITLE:

CHARTERERS:

PRINTED NAME:.................................... TITLE:
                        DAEBO SHIPPING CO., LTD.

EXHIBIT "2"

# PACIFIC BULK SHIPPING(SINGAPORE) PTE.L

c/o Rm 2212, 22/F West Tower Shun Tak Centre, 168-200 Connaught Road C. HK
Tel   · (852) 2581-1699          Fax  : (852) 2581-1799
E-Mail : ops@pacificbulk.com          Telex · 94575876 BULK G

To :    PESPA                                                                              C/P Date:
                                                                                           PBS055/07

## Debit Note

Re :    **MV XIAMEN SKY/PESPA CP DD 22ND JAN 2008--Preliminary Final  Hire**

ON-HIRE :   FROM 26-Jan-08 10:45 GMT          TO  23-Feb-08 15:10  GMT                      =

TOTAL OFF-HIRE

|  |  |  |  |  | USD |
|---|---|---|---|---|---|
| HIRE . | 28.18403DAYS | - OFF-HIRE  0 DAY(S) |  |  |  |
|  | = 28.18403 DAYS . | X USD $0,000 /DAY |  | = |  |
| LESS : | 3.75% ADDCOMM |  |  | = | 84,552.09 |
|  | 1.25% BROKERAGE |  |  |  | 28,184.03 |
| VALUE OF BOD |  |  |  |  |  |
|  | IFO 868.031 MT | X USD 500. /MT |  | = |  |
|  | MDO 43.632 MT | X USD 830. /MT |  | = |  |
| VALUE OF EST.BOR |  |  |  |  |  |
|  | IFO 874.3 MT | X USD 500. / MT |  |  | 437,150.00 |
|  | MDO 44.888 MT | X USD 830. / MT |  |  | 37,255.36 |
| LESS | MDO SUPPLIED FOR OWNRS |  | 30.134X935 |  | 28,175.29 |
| PLUS : | ILOHC |  |  |  |  |
| PLUS : | CVVE | USD 1250/PMPR | 28.18403 DAY(S) | = |  |
| PLUS : | ON HIRE SURVEY COST |  |  | = |  |
| LESS | OFF HIRE SURVEY COST |  |  |  | 640.00 |
| LESS | 1ST HIRE |  |  |  | 1,541,236.92 |
| LESS | 2ND HIRE |  |  |  | 307,286.05 |
| LESS | 3RD HIRE |  |  |  | 154,057.19 |
|  |  |  |  |  | 2,619,536.93 |
| BALANCE IN OWNERS' FAVOUR |  |  |  |  | 116,023.78 |
|  |  |  |  |  | 2,736,560.71 |

Please remit above amount to our bank account as follows:
⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚ ⬚⬚⬚, ⬚⬚⬚ ⬚⬚ ⬚⬚⬚ ⬚⬚⬚⬚, ⬚⬚⬚ ⬚⬚⬚⬚
⬚⬚⬚/⬚⬚⬚⬚⬚⬚ # 021000018
⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚ ⬚⬚⬚⬚, ⬚⬚⬚ ⬚⬚⬚⬚
6 ⬚⬚⬚⬚⬚⬚ ⬚⬚⬚, ⬚⬚⬚ ⬚⬚⬚⬚⬚⬚⬚⬚
⬚⬚⬚⬚⬚⬚⬚⬚ 068809
⬚⬚⬚⬚⬚ ⬚⬚⬚⬚⬚⬚, ⬚⬚⬚⬚⬚⬚⬚
⬚⬚⬚⬚ ⬚⬚⬚ ⬚⬚⬚⬚⬚, 034675
⬚⬚ ⬚⬚⬚⬚ ⬚⬚⬚⬚⬚, ⬚⬚ 24455
⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚, ⬚⬚⬚⬚⬚⬚ ⬚⬚⬚ ⬚⬚⬚⬚⬚⬚⬚ (⬚⬚⬚⬚⬚⬚⬚⬚) ⬚⬚⬚. ⬚⬚⬚.